[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 13, 2007
THOMAS K. KAHN
CLERK

No. 06-12251
Non-Argument Calendar

_____

D. C. Docket No. 02-03397-CV-BBM-1

HELEN R. BESTER,

Plaintiff-Appellant,

versus

MICHAEL O. LEAVITT, Secretary
Department of Health and
Human Services,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 13, 2007)**

Before BIRCH, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Helen R. Bester challenges on appeal the trial judge's response to questions by jurors, which she contends resulted in a verdict against her in her employment-discrimination action alleging race as the basis for her non-promotion and hostile-work environment, as well as retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. We AFFIRM.

## I. BACKGROUND

Bester, an African-American, began her employment with defendant-appellee's Food and Drug Administration ("FDA") in Nashville, Tennessee, in 1983 as a Consumer Safety Inspector, with a grade and pay level of GS-5. Through promotions, Bester progressed to the position of Safety Officer, Biologics Specialist, GS-12. While in the Nashville office in 1994, Bester complained about racial discrimination in the workplace. The specific incident about which she complained involved having to report to a supervisor who had competed with her for the supervisor's position. Subsequently, Bester was transferred to the Atlanta FDA office.

Bester has identified various events that she contends subjected her to a hostile-work environment based on race. Among these incidents was a training course in 1996, during which she alleges that an FDA employee referred to her as

2

"Tar Baby," about which she complained in a course evaluation. R8-105. She also contends that, because of her race, she did not receive a promotion to a GS-13 position that was awarded to Alice Papadimitriou, a Caucasian. Similarly, in 1998, Bester was not selected for the "Team Biologics Specialist" position, and she alleges that her supervisor gave her a negative reference based on race, although she admitted that she was not qualified for that position, id. at 134. In 1998 and 1999, pursuant to a joint request for training, Bester did not receive some training that Papadimitriou obtained, but Bester received other training that Papadimitriou did not receive. In 1999, following the death of her husband, which left her teenaged son alone at home, Atlanta management denied Bester's request on a hardship basis that she be permitted to resume flexi-place work that she had in Nashville. In November, 2004, Bester's request for permission to stay overnight in Macon, Georgia, following an inspection there, was denied. In all of these instances, and others, Bester contends that she was affected negatively because of her race.

Bester's employment-discrimination case was tried to a jury in the Northern District of Georgia. She presented three claims: (1) she was denied a promotion because of her race, (2) she was subjected to a hostile-work environment based on her race, and (3) she was subjected to adverse employment actions in retaliation for

3

engaging in activities protected by Title VII. The trial judge gave detailed charges to the jury, including charges on the hostile-work environment, race-discrimination claims and burden of proof. The judge's initial jury charges, concerning hostile-work environment, followed the Eleventh Circuit pattern jury instructions. The judge also provided charges for Bester's non-promotion and retaliation claims that included instruction on the motivating-factor burden of proof. Those charges also followed the Eleventh Circuit's pattern instructions.

The jury requested further instruction regarding Bester's burden of proof on the hostile-work environment, race-discrimination claim by specifically asking: "Does the claim subjected to a hostile work environment have to be actions related to race or anything else in the work environment?" R10 at 574. The judge consulted with counsel for both parties to advise of the question and of her intent to respond that "the answer is it has to be race." Id. The judge gave this additional instruction without objection from either party. Id. at 574-75.

The jury subsequently submitted a two-part question: "Do the actions taken have to be race related? If so, to what degree? A factor or the factor, has race got to be a factor or the factor?" Id. at 575. The trial judge again consulted with counsel for both parties concerning these questions, and the parties discussed the issues at length. Bester's counsel requested that the questions be answered with the

4

response that a hostile-work-environment claim based on race is established where race is a motivating factor. Defense counsel argued that the pattern charge for hostile-work-environment discrimination did not use the motivating-factor standard and that, if such a charge were given, it should be accompanied with a mixed-motive-defense charge applicable in all disparate-treatment cases.

The trial judge considered the parties' arguments, then gave the following instructions:

> Your question, do the actions taken have to be race related, and the answer to that is "Yes". And the question, "If so, to what degree," is one that there is a lot of case law we're struggling with. And the case law uses two terms, one of which I hope you'll find helpful. They say race would have to be a, quote, determinative consideration, end quote, determinative consideration, or some other cases use the term "motivating factor, motivating factor". And so if race danced through somebody's mind, that's probably not enough. But if it tipped the scale, then it probably is enough. But, anyway, the best guidance I can give you is that what the case law says is race would have to be a determinative consideration and some of the other case law says motivating factor. So that's the best help I can give you.

Id. at 586-87. Bester's counsel did not object to the additional instructions. Id. at 586-88.

The jury returned a verdict for the defendant-appellee on all three claims. Bester obtained new counsel; this appeal followed. Bester's only issue on appeal challenges the second-supplemental-jury instruction in response to a written question from the jury asking whether, in the context of the hostile-work

5

environment, race-discrimination claim, race must be a factor or the factor for the employer's allegedly discriminatory actions.

## II. DISCUSSION

Federal Rule of Civil Procedure 51(d) governs assignment of error as to jury instructions. Because Bester's counsel did not object to the second jury instruction in question, and the judge did give her counsel's requested instruction concerning race being the motivating factor, neither Rule 51(d)(1)(A) or (B) is applicable. Fed. R. Civ. P. 51(d)(1)(A) & (B). Accordingly, Bester's challenge to the trial judge's jury instruction must be analyzed under Rule 51(d)(2): "A court may consider a plain error in the instructions affecting substantial rights that has not been preserved as required by Rule 51(d)(1)(A) or (B)." Fed. R. Civ. P. 51(d)(2).

The plain-error standard of review that we use in considering an appeal from jury instructions, where there was no objection in the district court, is to prevent miscarriage of justice. Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1329 (11th Cir. 1999). Plain-error review requires Bester to establish four factors: (1) "an error occurred"; (2) "the error was plain"; (3) the error "affected substantial rights"; and (4) the error, if not corrected, "would seriously affect the fairness of the judicial proceeding." Id. In the context of allegedly erroneous jury instructions, "we accord the trial judge 'wide discretion as to the style and wording

6

employed' in jury instructions." Id. (citations omitted). We review the jury instructions "together rather than separately for reversible error," and plain-error reversal in jury instructions "will occur 'only in exceptional cases where the error is "so fundamental as to result in a miscarriage of justice.""" Id. (citations omitted).

Although Bester challenges only the judge's instructions following the second time that the jurors asked the judge questions during their deliberations, or the last jury instructions, we must consider the instructions in conjunction with all the jury instructions. The judge's initial jury charge on the hostile-work-environment claim, which Bester does not challenge, followed the Eleventh Circuit pattern instructions with minor changes. Those instructions did not apply a motivating-factor standard. Instead, the judge explained that Bester must prove that

> one, the plaintiff was subjected to racially offensive acts or statements; two, such acts or statements were unwelcome and had not been invited or solicited, directly or indirectly, by the plaintiff's own acts or statements; three, such acts or statements resulted in a work environment that was so permeated with discriminatory intimidation, ridicule or insult of sufficient severity or pervasiveness that it materially altered the conditions of the plaintiff's employment; four, a reasonable person, as distinguished from someone who is unduly sensitive, would have found the workplace to be hostile or abusive; and, five, the plaintiff personally believed that the workplace environment was hostile or abusive.
> Whether a workplace environment is hostile or abusive can be determined only by looking at all of the circumstances including the frequency of the discriminatory conduct; its severity; whether it was

7

physically threatening or humiliating; and whether it unreasonably interfered with the employee's work performance. . . .

Conduct that only amounts to ordinary socializing in the workplace such as occasional horseplay, sporadic or occasional use of abusive language, and occasional teasing, does not constitute an abusive or hostile environment. Only extreme conduct amounting to a material change in the terms and conditions of employment is actionable.

R10 at 558-59.

The trial judge further instructed that, when racial discrimination or

harassment is carried out by a supervisor with immediate or successively higher authority over the plaintiff culminating in an adverse tangible employment action against the plaintiff, the defendant employer is responsible under the law for such behavior. A "tangible employment action" is a significant change in the employment status that affects the terms and conditions of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

Id. at 559-60. For Bester to recover damages as the result of "having been subjected to unlawful racial discrimination culminating in an adverse tangible employment action," the jury was instructed that she "must prove that such damages were proximately or legally caused by the unlawful discrimination." Id. at 560. The judge explained that, "[f]or damages to be the proximate or legal result of unlawful conduct, it must be shown that, except for such conduct, the damages would not have occurred." Id.

After some deliberation, the jury requested further instruction concerning

8

Bester's burden of proof regarding the hostile-work-environment claim. Specifically, they asked: "Does the claim subjected to a hostile work environment have to be actions related to race or anything else in the work environment?" Id. at 574. The judge's first supplemental instruction, consistent with the original charge, was "the answer is it has to be race." Id. at 575. Bester does not challenge that answer to the jury's first question.

Instead, she takes issue with the judge's response to the jury's second inquiry, which was a two-part question: "Do the actions taken have to be race related? If so, to what degree? A factor or the factor, has race got to be a factor or the factor?" Id. Bester does not challenge the judge's answer to the first part of the second jury inquiry, which is consistent with her response to the first question; the actions do have to be race related. In response to the second part of the jury's second question, the judge gave a motivating-factor instruction that was sought by Bester's attorney.

On appeal, however, Bester argues that the judge's instruction was erroneous because it misrepresented our case law defining the role race must play in acts used to support a hostile-work-environment claim based on race. Appellant's Br. at 8-10. Bester focuses on the judge's use of two terms: "determinative consideration" and "motivating factor" in the second supplemental instruction to the jury. R10 at

9

586, 587. She contends that the instruction gave the impression "that different courts use different terms in resolving to what degree discriminatory animus must be a factor in such claims," Appellant's Br. at 8, and "left the jury with the express communication that these terms were not synonymous," id. at 9. She argues that "the jury should have been instructed that Plaintiff did not have to prove race was the factor, but rather a motivating or determinative factor." Id. at 10.

Bester's argument is a distinction without a difference. Even she notes that "courts in this Circuit usually use both terms." Id. at 8. In responding to the second question from the jury, the trial judge properly advised that cases have used both terms and gave a simple interpretive example for both interchangeable terms by comparing "race danced through somebody's mind" with race "tipped the scale." R10 at 586, 587.

We used both terms in O'Donnell v. Georgia Osteopathic Hospital, Inc., 748 F.2d 1543 (11th Cir. 1984), overruled on other grounds, Lindsey v. American Cast Iron Pipe Co., 810 F.2d 1094 (11th Cir. 1987),where we stated that the "ultimate factual issue . . . is whether age was a determinative factor," id. at 1549, and subsequently noted that "'[a]n ADEA plaintiff is not required to show that age was the sole motivating factor in the employment decision,'" but must show that "'age

10

was the factor that made a difference,'" id. at 1550 (citation omitted).[1] In Farley,

the trial judge gave a "motivating factor" charge, and we noted that "[a]

'motivating factor' is synonymous with a 'determinative factor'" and that "the use of

the 'motivating factor' language is not a clear misstatement of the law, and certainly

does not rise to the level of a plain error so fundamental as to affect the fairness of

the proceedings." Id. at 1334. We additionally explained that we had recognized

that "the 'determinative factor' language was 'a correct statement of the law.'" Id. at

1335 (quoting Carter v. DecisionOne Corp., 122 F.3d 997, 1005 (11th Cir. 1997)

(per curiam)).

Our cases state that both the terms "determinative consideration" and

"motivating factor" are correct statements of law and that they are synonymous. In

this case, the district judge presented the jury with both terms, advised that they

were used interchangeably in our cases, and provided a definitive, understandable

example for both terms: race must tip the scale. Notably, the trial judge gave the

challenged charge after having previously instructed the jury on determinative

consideration and motivating factor by using a motivating-factor instruction in the

---

[1] Bester also cites Clark v. Coats & Clark, Inc., 990 F.2d 1217 (11th Cir. 1993). Clark was before us on appeal from a summary judgment in favor of the defendant. In analyzing the age-discrimination claim in an unlawful-discharge case, we recognized that a plaintiff ultimately must prove that "age was a determining factor" in his or her discharge, id. at 1226, and concluded that the evidence was sufficient that "a rational juror could infer that age was a determinative factor," id. at 1228.

11

non-promotion charge and using a determinative-consideration instruction in the retaliation charge, R10 at 557, 564; the jury did not seek clarification of either term in those charges. Under our circuit law, Bester can show neither a clear misstatement of the law nor an error rising to the level of a "plain error so fundamental as to affect the fairness of the proceedings." Farley, 197 F.3d at 1334.

Additionally, Bester has failed to show that the challenged jury instruction affected the outcome of the trial. She contends that the instruction was harmful because it "left the jury with the express communication that these terms were not synonymous"; implicit in her argument is the speculation that it led the jury to believe that the answer to its question was that the courts are split as to whether race must be a factor or the factor in adverse-treatment cases. Appellant's Br. at 9. The trial judge, however, clearly advised the jury that courts have used both terms interchangeably. Moreover, she carefully explained that, if Bester showed that race was a factor that "tipped the scale," then that would be sufficient as opposed to race having "danced through somebody's mind." R10 at 586.

Considering the questioned supplemental instruction with the other jury charges, rather than in isolation, further shows the lack of merit to Bester's claim of racial discrimination. We note that Bester's examples of racial discrimination about which she complains do not rise to the level of proof for her claims. The

alleged "Tar Baby" reference that occurred in 1996 was made by an FDA employee at a training course, not a supervisor or apparently anyone having direct influence as to Bester's job or promotions in the FDA. Significantly, the comment occurred in the context of a training course and not in the day-to-day working situation; it was not a constant or persistent factor in Bester's employment. To the extent that she alleges that the promotion of Alice Papadimitriou to GS-13 was because of race, Bester has offered no proof that race was the reason as opposed to qualifications or credentials for the promotion. She and Papadimitriou jointly applied for additional training. While Papadimitriou received some training that Bester sought, Bester received training that Papadimitriou did not receive. Similarly, other decisions that Bester alleges were race based, such as discontinuance of her flexi-place work from Nashville by the Atlanta office as well as denying an overnight stay following an inspection out of Atlanta, do not appear necessarily to be race related.

Unlike the pattern charge for hostile-work-environment claims, the pattern jury instructions in our circuit for the non-promotion and retaliation claims do include mixed-motive instructions, which is whether the protected attribute must be the factor or a factor. The trial judge followed those pattern instructions with minor modifications. Concerning Bester's non-promotion claim, the judge

13

instructed: "[I]t's not necessary for Ms. Bester to prove that her race was the sole or exclusive reason for the defendant's decision not to promote her. It is sufficient if Ms. Bester proves that race was a motivating factor that made a difference in the defendant's decision." R10-557 (emphasis added). The judge's charge for the retaliation claim instructed: "[I]t's not necessary for Ms. Bester to prove that her protected activity was the sole or exclusive reason for the defendant's decision. It is sufficient that the plaintiff proves that her protected activity was a determinative consideration that made a difference in the defendant's decision." Id. at 564 (emphasis added).

Accordingly, the jury had been instructed on both motivating factor and determinative consideration in the context of Bester's non-promotion and retaliation claims. The jury did not seek further instruction on applying these concepts. Instead, the jury inquired whether the hostile-work-environment claim was also subject to the lesser burden to show that race was a factor or whether it was subject to a burden of showing that race was the factor for the employer's actions. Bester apparently accepted the jury's understanding of both terms regarding the non-promotion and retaliation claims; consequently, her not understanding them as to the context of the hostile-work-environment claim is illogical. While Bester may disagree with the style and wording the judge used in

14

the challenged supplemental, hostile-work-environment instruction, the trial judge has "'wide discretion'" concerning the style and language used in jury instructions. Farley, 197 F.3d at 1329 (citation omitted). Therefore, Bester's contention that the trial judge should have instructed the jury as to the hostile-work environment that "Plaintiff did not have to prove race was the factor, but rather a motivating or determinative factor," is an incorrect statement of our circuit law as to proof of hostile-work environment, which the trial judge correctly stated to the jurors. Appellant's Br. at 10. Accordingly, Bester's challenge to the trial judge's second supplemental instructions on appeal is meritless.

### III. CONCLUSION

On appeal, Bester has challenged the verdict in her claims alleging race discrimination as the reason for the FDA's non-promotion, retaliation, and hostile-work environment regarding her because of the trial judge's supplemental instruction to the jury concerning proof of a hostile-work environment. As we have explained, the judge properly instructed the jury as to the proof necessary for a hostile-work environment. Therefore, the jury verdict is **AFFIRMED**.